NOT DESIGNATED FOR PUBLICATION

No. 118,794

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN T. BAKER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed March 22, 2019. Reversed and remanded.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., HILL, J., and WALKER, S.J.

PER CURIAM:  John T. Baker appeals following his conviction of a single count of robbery. On appeal, Baker argues that the district court violated his constitutional right to a fair trial by excluding relevant evidence integral to his theory of defense. We agree with Baker, and reverse his conviction, and remand to the district court for a new trial. Baker also contends that the court violated his constitutional rights when it sentenced him based upon a criminal history that was not proved to a jury beyond a reasonable doubt. Although this commonly raised issue is moot, numerous prior rulings of our courts have found such an issue to be meritless.

1

FACTS

On January 8, 2017, Lawrence Police Officer Daniel Kalen was dispatched to the scene of a reported aggravated robbery in a neighborhood near the University of Kansas (KU). Upon arrival at the scene, Kalen spoke with Curtis Ray, the alleged victim. Ray advised that he had been walking home after working at Chili's restaurant when he was robbed at gunpoint by a white man and a white woman who were driving a black, two-door Dodge Ram pickup truck. KU's video footage showed a truck matching this description driving around campus near the time of the alleged robbery. Ray's cell phone and driver's license were later found discarded on or near campus.

A few days after the robbery, an acquaintance of Baker's contacted law enforcement to report that he had seen Baker and his girlfriend, Stacey Ballard, in a black truck matching the description of the truck from the robbery. Later the same day, an officer observed Baker and a woman believed to be Ballard in a black truck. Law enforcement discovered that the truck was registered to Ballard's stepfather and later searched his residence, where Ballard and Baker also lived. At the residence, law enforcement located a shotgun-style nail gun and a wallet containing several cards bearing Ray's name.

The State initially charged Baker with one count each of aggravated robbery and criminal possession of a weapon. Prior to trial, the State voluntarily dismissed the latter count and the case proceeded to trial on the aggravated robbery charge.

At trial, Ray testified that on January 8, 2017, he left work at Chili's and walked home because his car was in the shop. As he walked through the neighborhoods near the KU campus, he encountered a single-cab black Dodge Ram truck driving toward him. The truck turned around at an intersection and approached him from behind. Ray stated that a white female drove the truck with a white male in the passenger seat; both were

2

wearing hoods or beanies. The man in the passenger seat called out to him and asked for directions. Ray was suspicious, so he looked at the license plate on the back of the truck, and the male occupant of the truck swore at him for doing so. Ray stated that he could not identify the plate number but did notice that it was a Kansas license plate.

According to Ray, the man then pulled out and pumped a shotgun, pointing it at Ray and demanding his possessions. Concerned that the man would shoot him, Ray handed the female driver his server's apron containing his tip money, a wallet from his back pocket, and a cell phone from a jacket he had on. The man then ordered Ray to lie down facing away from the truck. Ray did so and the truck fled the scene. Ray got up and ran toward a dark parking lot to hide in case the truck returned. While fleeing, Ray encountered a jogger and borrowed her phone to call the police.

Ray testified that shortly after the robbery, he received a Facebook friend request from Stacey Ballard. Ray declined the invitation because he did not know her. After learning about Ballard's arrest, Ray realized that the woman involved in the robbery was the person who had sent the friend request. When he accessed Ballard's Facebook page, Ray saw pictures of Baker and identified him as the male passenger in the truck who had robbed him.

Of critical importance to Baker's key issue on appeal, under cross-examination before the jury Ray denied that he used drugs or associated with people who did drugs. Ray also denied that any discussion of drugs took place during the robbery or that he was looking to get any drugs from Baker and Ballard.

Testifying on his own behalf at trial, Baker presented a much different version of events. Baker testified that on January 8, 2017, he and Ballard went out to purchase some methamphetamine. Upon discovering that they would need more money to purchase enough of the drug for both Baker and Ballard to get high, Baker said that he decided to

3

mix their small amount of methamphetamine with rock salt and then drive through the KU campus looking for someone to sell it to.

Baker claimed that when he saw Ray, he recognized him from a drug house he had visited a week earlier. Baker stated that on this prior occasion, Ray was with people who were using methamphetamine, which led him to believe that Ray was someone who would be interested in buying drugs. Baker testified that after he asked Ray for directions, he offered Ray 3.5 grams of the methamphetamine in exchange for $300. According to Baker, Ray said that he did not have $300 but would leave his phone, apron, and wallet as collateral while he picked up the money from a friend who lived nearby.

Instead of waiting for Ray to return with the money, however, Baker stated that he drove away with Ray's belongings and later threw Ray's phone and driver's license out of the truck. Baker denied threatening Ray with a weapon or with any physical violence and denied having a nail gun in his possession. Baker claimed that Ballard had tried to friend Ray on Facebook because she wanted to return his wallet to him.

The jury found Baker guilty of the lesser included offense of robbery. The district court sentenced Baker to 130 months in prison with a postrelease supervision period of 24 months. The court also ordered Baker to pay restitution in the amount of $100 to Ray. Baker has timely appealed from his conviction and resulting sentence.

ANALYSIS

On appeal, Baker first contends that the district court violated his constitutional right to a fair trial by excluding relevant evidence integral to his theory of defense.

4

When reviewing evidentiary challenges and a defendant's assertion that the district court violated his or her constitutional right to present his or her theory of defense, our Supreme Court has stated:

"Appellate courts apply a multistep analysis of decisions to admit or exclude evidence. Under this multistep analysis, the first question is relevance. K.S.A. 60-404(b) defines relevant evidence as evidence that is probative and material. On appeal, the question of whether evidence is probative is judged under an abuse of discretion standard; materiality is judged under a de novo standard. Review of whether a trial court erroneously excluded evidence that is integral to the defendant's theory of his or her defense is de novo.

"Material evidence tends to establish a fact that is at issue and is significant under the substantive law of the case. Probative evidence requires only a logical connection between the asserted fact and the inference it is intended to establish.

. . . .

"A criminal defendant has the right, under both the Kansas and United States Constitutions, to present the theory of his or her defense, and the exclusion of evidence that is an integral part of that theory violates the defendant's fundamental right to a fair trial. In order to constitute error, the excluded evidence supporting the defense theory must be relevant, admissible, and noncumulative. A defendant's right to present evidence in support of a defense is subject to certain restraints: the evidence must be relevant, and evidentiary rules governing admission and exclusion of evidence are applied. [Citations omitted.]" *State v. Robinson*, 306 Kan. 431, 435-36, 394 P.3d 868 (2017).

To consider what was integral to Baker's defense, we must first assess what the State had to prove to convict him of robbery. K.S.A. 2017 Supp. 21-5420(a) defines robbery as "knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person." Here, the State alleged that the robbery was aggravated because Baker was armed with a dangerous weapon, a nail gun. See K.S.A. 2017 Supp. 21-5420(b)(1). The district court instructed the jury on the charged crime of aggravated robbery as well as the lesser included offense of robbery.

The essence of Baker's defense was that he did not take Ray's belongings by force or threat, proof of which is required for the crime of robbery. Instead, Baker claimed that he stole the items after Ray willingly handed over his belongings as collateral during a drug deal. In other words, Baker alleged that his actions constituted theft, not robbery. Theft is defined, in relevant part, as obtaining control over property by deception with intent to permanently deprive the owner of the use or benefit of the property. K.S.A. 2017 Supp. 21-5801(a)(2). In accordance with Baker's theory of defense, the district court instructed the jury on theft as a lesser included offense of aggravated robbery and robbery.

In support of his theft by deception theory of defense, Baker sought to introduce testimony from Joshua Fairbanks, a witness who claimed to know Ray. Fairbanks testified that he met Ray in October 2016 at a gas station near the Chili's where Ray worked. Fairbanks said that he was buying cigarettes when he saw Ray buying some Swisher cigars. Fairbanks claimed that he and Ray conversed about trading drugs. The prosecutor objected based on relevance, and the following exchange occurred outside the presence of the jury:

> "MS. BRITTON [the prosecutor]: I'll object to the relevance of this interaction from October 2016, as to whether—how that is relevant to whether an aggravated robbery took place in January of 2017.
> "MR. LOWRY [defense counsel]: It goes directly toward to it. Judge, as you may recall from my opening statements to the jury yesterday, our defense is going to be that my client recognized Mr. Ray because Mr. Ray is involved with people who buy and sell methamphetamine, and he is himself a user.
> "Judge, and this simply is a prelude to that. And it's highly—in fact, it's absolutely relevant to our defense, and it is essential to our defense.
> "MS. BRITTON: Even if Curtis Ray is a methamphetamine user, which he is not, whether he was using it back in October is completely irrelevant. The only thing that would be relevant is whether he was using it on the night that this happened.
> "THE COURT: How is this going to tie into the robbery?

6

"MR. LOWRY: It's going to tie in because Mr. Ray was known—because of his use of meth and as having been around people using meth, he was known to my client. My client recognized him and did not approach him to rob him, but simply approached him to see if he wanted to buy some meth.

"THE COURT: It would certainly be relevant if your client says that's how he knows him and that's how he was identified. But how this person knows him, I don't see how that ties into how your client knows him.

"MR. LOWRY: Well, because, frankly, Judge, it bolsters my client's statement that he was aware of Curtis Ray. I mean, Mr. Ray has had prior dealings with Joshua Fairbanks and with respect to methamphetamine. So he was known—a known user among people who used meth, including my client. It's highly relevant, Judge.

"THE COURT: It's too far removed into speculative.

"MR. LOWRY: It's only two months away, Judge. And it[']s near where [Ray] works—worked at the time.

"THE COURT: It does not tie into your client. It ties [Ray] to this man, but it doesn't tie [Ray] to your client for purposes of identification."

Given the district court's ruling, defense counsel was permitted to ask no further questions of Fairbanks. The prosecutor then asked the court to strike Fairbanks' testimony as irrelevant. Over defense counsel's objection, the district court ordered the jury to disregard Fairbanks' testimony.

On appeal, Baker argues that Fairbanks' testimony was relevant because it demonstrated that Ray had a history of using or buying drugs and tended to show that Ray was therefore likely to engage in the drug deal that Baker described. Baker claims this evidence would have corroborated and demonstrated the reasonableness and plausibility of his defense that he committed the crime of theft, not robbery. He also argues it was relevant to support his testimony that he met Ray at a drug house.

When reviewing a district court's decision concerning the admission of evidence, an appellate court first determines whether the evidence is relevant. All relevant evidence

is admissible unless statutorily prohibited. Evidence is relevant if it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b). Accordingly, there are two elements of relevancy: a materiality element and a probative element. Materiality addresses whether a fact has a legitimate and effective bearing on the decision of the case and is in dispute. Evidence is probative if it has any tendency in reason to prove a fact. We review a district court's determination that evidence is probative for abuse of discretion, whereas the district court's decision regarding materiality is reviewed de novo. *State v. Boleyn*, 297 Kan. 610, 622, 303 P.3d 680 (2013).

After careful review, we believe the district court's ruling focused too narrowly on the materiality of Fairbanks' testimony in this case. Baker's entire theory of defense was that he never robbed Ray, and only approached Ray on the night in question because Baker recognized Ray as someone who did drugs and Baker wanted to do a drug deal with him. The district court was likely correct that Fairbanks' proposed testimony (that he did a drug deal with Ray in October 2016, three months before the alleged robbery) did not establish how Baker recognized Ray. But it was certainly material in that it corroborated Baker's theory of defense as to why he approached Ray in the first place. Thus, we believe the district court erred in excluding Fairbanks' testimony as irrelevant since the testimony directly related to Baker's defense theory and had probative value in buttressing Baker's own testimony about his reasons for waylaying Ray.

But there is an equally potent reason why the district court erred in excluding the testimony of Fairbanks. During cross-examination of Ray during the State's case-in-chief, he was directly asked by defense counsel, without objection from the State, whether he had ever taken methamphetamine or hung around people who did take it. Ray responded, "No" to both questions. In the few questions the defense was able to ask Fairbanks before the judge halted the testimony following the State's objection, Fairbanks indicated that Ray "had told me that he did do dope." When discussing the objection before the trial judge and the relevance of the testimony, Baker's defense counsel indicated that "[i]t's

8

going to tie in because Mr. Ray was known—because of his use of meth and as having been around people using meth, he was known to my client. . . . So he was known—a known user among people who used meth, including my client." Thus, Fairbanks' testimony was offered as directly impeaching the credibility of Ray's statements that he neither used methamphetamine nor hung around those who did.

K.S.A. 60-420 states:

"Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility."

Applying this statute in the case of a party seeking to rebut the credibility of a witness, our Supreme Court has held:

"Rebuttal evidence is that which contradicts evidence introduced by an opposing party. It may tend to corroborate evidence of a party who first presented evidence on the particular issue, or it may refute or deny some affirmative fact that an opposing party has attempted to prove. It may be used to explain, repel, counteract, or disprove testimony or facts introduced by or on behalf of the adverse party." *Boleyn*, 297 Kan. 610, Syl. ¶ 4.

After the State's case, the jury was left with the clear impression of Ray as a person who was totally uninvolved with methamphetamine and the drug culture. The defense's proffered testimony from Fairbanks was a direct attack on the truthfulness of Ray's statements from the witness chair. And, as noted earlier, it helped corroborate Baker's own testimony as to his reasons for stopping and approaching Ray. We conclude for both reasons that the evidence was material and probative, and therefore relevant. It was thus error for the district court to exclude Fairbanks' testimony from the evidence. See *State v. Nixon*, 223 Kan. 788, 793-94, 576 P.2d 691 (1978) (district court erred by

9

precluding defendant from presenting evidence to show that State's witness had been untruthful in her testimony).

The State contends that, even if exclusion of this evidence by the district court was erroneous, the error was harmless. We disagree.

In its brief, the State argues that despite any error in the district court's refusal to allow in the Fairbanks testimony, the defense was not prevented from presenting its theory of the case. The State suggests that because Baker was able to testify in his own behalf, including his memory about meeting Ray at a drug house, and because of the State's "strong evidence against Baker," reversal is not called for.

But the fact remains that the most crucial evidence in the case:  Ray's testimony of an armed robbery scenario versus Baker's "drug deal gone awry resulting in a theft" version—relies largely on the credibility of those two main witnesses. And the proffered but excluded Fairbanks testimony goes straight to the heart of Ray's truthtelling. When coupled with the presumption of innocence owed to Baker, we are sufficiently troubled by the exclusion of Fairbanks testimony that we cannot hold the error to be harmless. We conclude that the district court's error substantially deprived Baker of his right to challenge the credibility of the State's key witness, and thus it was a denial of his right to a fair trial. Under these circumstances, we must reverse and remand for a new trial.

In light of our reversal in this case, Baker's second complaint on appeal, which concerns his sentencing, is moot. Additionally, his contentions amount to a request for us to ignore settled precedent from our Supreme Court. However, we will address the issue Baker raises in order to provide guidance in the further proceedings in this case.

Baker argues the district court violated his constitutional rights as recognized in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when

it sentenced him based upon a criminal history that had not been proven to a jury beyond a reasonable doubt. Baker concedes that the Kansas Supreme Court has decided this issue against him but raises the issue to preserve it for federal review. See *State v. Ivory*, 273 Kan. 44, 45-48, 41 P.3d 781 (2002) (use of criminal history to enhance sentence not unconstitutional).

Because there is no indication that our Supreme Court is departing from its position in *Ivory*, we are duty bound to follow it. See *State v. Watkins*, 306 Kan. 1093, 1093-94, 401 P.3d 607 (2017) (reaffirming *Ivory*); *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015) (Court of Appeals duty bound to follow Supreme Court precedent). Consequently, this argument provides no basis for relief.

Reversed and remanded for new trial.